THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC - BALTIMORE
24 JUL 17 PM 12:22

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**AMIT AHUJA,**<br>**KAPIL GULATI, and**<br>**PRIYANSHU WALIA,**<br><br>Defendants. | <u>UNDER SEAL</u><br><br>CRIMINAL NO. RDB-24-0230<br><br>(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349; Wire Fraud, 18 U.S.C. § 1343; Forfeiture, 18 U.S.C. § 981(a)(1)(C) and 982; 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c))). |

# INDICTMENT

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges:

#### Introduction

At times material to this Indictment:

1. **DEFENDANT AMIT AHUJA ("AHUJA")** resided in Westminster, Maryland.

2. **DEFENDANT KAPIL GULATI ("GULATI")** resided in Glen Burnie, Maryland.

3. **DEFENDANT PRIYANSHU WALIA ("WALIA")** resided in Westminster, Maryland and Cleveland, Ohio.

4. Victim 1, Victim 2, Victim 3, and Victim 4 were real persons living in West Virginia, Maryland, Maryland, and Kansas, respectively.

5. SunTrust Bank, Truist Financial Corporation ("Truist"),[1] and TD Bank were financial institutions as defined in Title 18 U.S.C. § 20.

---

[1] In 2019, SunTrust Bank and BB&T merged and began operating under the name Truist.

6.    A "remotely created check" or "RCC," also known as a tele check or preauthorized draft, is a type of payment instrument in which the payee (the person or organization receiving the payment) created the check electronically on behalf of the payor (the person making the payment). This could be accomplished with the payor's consent, although unlike a traditional paper check, the payor did not physically sign the RCC. RCCs required the payor to provide their banking information, including their routing number, bank account number, and other information. Once authorized, the payee generated the RCC, which contained the payor's bank account details, and the payment amount.

## The Scheme and Artifice to Defraud

7.    From at least in or around April 2017 through in or around November 2021, in the District of Maryland and elsewhere,

**AMIT AHUJA,
KAPIL GULATI, and
PRIYANSHU WALIA,**

the defendants herein, did knowingly devise and intend to devise a scheme and artifice to defraud victims across North America, many of whom were elderly, by means of false and fraudulent pretenses, representations, and promises, that is the defendants operated a technical support fraud scheme ("the Tech Support Scheme") in which false and misleading information was provided to victims so they would believe that their personal computers were infected with a virus and malware and payments of money were needed for computer repair services when in reality the victims had been deceived and provided with software available for free online.

## The Conspiracy to Execute the Scheme to Defraud

8.    From at least in or around April 2017 through in or around November 2021 in the District of Maryland and elsewhere,

**AMIT AHUJA,**
**KAPIL GULATI, and**
**PRIYANSHU WALIA,**

the defendants herein, did knowingly and willfully conspire, confederate, and agree with other persons known and unknown to the Grand Jury ("the co-conspirators"), to commit wire fraud, that is to knowingly execute and attempt to execute the Tech Support Scheme through interstate and foreign wires in violation of 18 U.S.C. § 1343.

### Object of the Conspiracy and Scheme to Defraud

9. It was the object of the conspiracy and scheme to defraud for **AHUJA**, **GULATI**, and **WALIA** (collectively the "**DEFENDANTS**") to personally enrich themselves by fraudulently obtaining and attempting to obtain money from many individuals, including elderly and vulnerable victims, based on materially false and fraudulent pretenses, representations, and promises pertaining to the condition, security, and vulnerabilities of the victims' computers, and the services and software allegedly required to address the issues.

### Manner and Means of the Conspiracy and Scheme to Defraud

10. It was part of the conspiracy and scheme to defraud that the **DEFENDANTS** formed shell companies, which had no employees and provided no actual business or service. The sole purpose of the shell companies was to provide anonymity to the beneficial owners.

11. It was further part of the conspiracy and scheme to defraud that the **DEFENDANTS** used shell company names that closely resembled names of legitimate computer companies that operated in the United States, such as MAK Bros, LLC, Windows Solutions LLC, and MSDN LLC, and legitimate computer security companies, such as Webroot LLC.

12. It was further part of the conspiracy and scheme to defraud that the **DEFENDANTS** opened, controlled, and used approximately 25 bank accounts associated with

the shell companies at various financial institutions from in or around May 2017 through in or around November 2021.

13. It was further part of the conspiracy and scheme to defraud that **AHUJA** purchased, registered, and inquired about a toll-free telephone number ending in 3555, which was used to communicate with victims in furtherance of the Tech Support Scheme, including Victim 1 and Victim 3.

14. It was further part of the conspiracy and scheme to defraud that **GULATI** and his co-conspirators rented virtual private servers, one of which was identified as a website, "msalert20181.site," which warned of "Malicious Pornographic Spyware/Riskware Detected."

15. It was further part of the conspiracy and scheme to defraud that **GULATI** purchased website domains that appeared to be affiliated with legitimate technical support businesses, such as "payment-microsoft.com," "payment-bestbuy.com," "receiptamazon.com," and "call-microsoft-whtps-hardware-error-toll-free-1-800-619-7992.us."

16. It was further part of the conspiracy and scheme to defraud that the co-conspirators caused victims to be contacted through one of three tactics, namely (1) a pop-up window appearing on the victim's computer directing the victim to call a phone number; (2) an unsolicited phone call to the victim; and (3) a phone call initiated by a victim calling a phone number that they found through an online search for what they believed was a legitimate technical support company.

17. It was further part of the conspiracy and scheme to defraud that the co-conspirators caused the victims to receive pop-up windows with an audible alarm and messages that their device had been "compromised" by a computer virus. The pop-up notifications suggested that victims contact a toll-free number, which was staffed by individuals furthering the Tech Support Scheme.

18. It was further part of the conspiracy and scheme to defraud that the co-conspirators emphasized to victims the need for immediate action to pay money to have their purported computer issues fixed.

19. It was further part of the conspiracy and scheme to defraud that the co-conspirators led the victims to falsely believe that the actions of the Tech Support Scheme were affiliated with legitimate computer companies and legitimate computer security companies.

20. It was further part of the conspiracy and scheme to defraud that the co-conspirators sought remote access to the victims' computers by falsely leading the victims to believe that it would allow them to address significant issues on the computer.

21. It was further part of the conspiracy and scheme to defraud that the co-conspirators used their remote access to the victims' computers to falsely note the purported existence of a serious computer virus or other threat to the computer, including sometimes falsely claiming that a hacker would soon be able to access the victim's personal information, such as financial account numbers and passwords.

22. It was further part of the conspiracy and scheme to defraud that the co-conspirators claimed that they would install expensive and high-quality network security software to resolve the threat in exchange for money.

23. It was further part of the conspiracy and scheme to defraud that the **DEFENDANTS** offered money processing services, including to co-conspirators in India, and developed a fee structure for each transaction involving a Tech Support Scheme victim.

24. It was further part of the conspiracy and scheme to defraud that the **DEFENDANTS** used and caused the use of bank accounts associated with the shell entities for receiving and transmitting victim funds.

25. It was further part of the conspiracy and scheme to defraud that once a victim provided payment, the co-conspirators continued to identify new and additional phony issues with the victims' computers, such that some victims made multiple payments to the **DEFENDANTS** and their co-conspirators for purported technical support services.

26. It was further part of the conspiracy and scheme to defraud that **AHUJA** and **GULATI** refunded and offered refunds to customers who complained so the Tech Support scheme could continue and avoid negative attention.

27. It was further part of the conspiracy and scheme to defraud that the **DEFENDANTS** obtained and sought to obtain more than $3.5 million dollars from more than 1,000 victims for phony and unnecessary computer services and repairs.

18 U.S.C. § 1349

## COUNTS TWO THROUGH ELEVEN

### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 7, and 9 through 27 of Count One are re-alleged and incorporated herein by reference.

2. On or about the dates set forth below, in the District of Maryland and elsewhere,

**AMIT AHUJA,**
**KAPIL GULATI, and**
**PRIYANSHU WALIA,**

the defendants herein, having devised and intending to devise the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below for the purpose of executing such scheme and artifice to defraud, as follows:

| Count | Date | Description | Interstate Wire |
|---|---|---|---|
| 2 | 10/3/2019 | Victim 2's $1,000.99 **RCC 2316** deposited to **WALIA's** Bushido LLC SunTrust Bank account ending in 5339 | From Maryland to a location outside of Maryland |
| 3 | 11/9/2019 | Victim 2's $1,499.99 **RCC 2325** deposited to **GULATI's** MSDN LLC TD Bank account ending 8914 | From Maryland to a location outside of Maryland |
| 4 | 11/27/2019 | Victim 1's $4,400 **RCC 4945** deposited to **GULATI's** MSDN LLC TD Bank account ending in 8914 | From Maryland to a location outside of Maryland |
| 5 | 11/27/2019 | Victim 1's $4,200 **RCC 4947** deposited to **WALIA's** Bushido LLC SunTrust Bank account ending in 5339 | From Maryland to a location outside of Maryland |
| 6 | 11/29/2019 | Victim 1's $4,255 **RCC 4948** deposited to **GULATI's** MSDN LLC TD Bank account ending 8914 | From Maryland to a location outside of Maryland |

| | | | |
|---|---|---|---|
| 7 | 12/19/2019 | Victim 2's $2,499.99 **RCC 2337** deposited to **WALIA's** Bushido SunTrust Bank account ending 5339 | From Maryland to a location outside of Maryland |
| 8 | 1/22/2020 | Victim 2's $2,361.15 **RCC 2344** deposited to **GULATI's** Foison LLC SunTrust Bank account ending in 3257 | From Maryland to a location outside of Maryland |
| 9 | 1/31/2020 | Victim 3's $149.99 **RCC 239** deposited into **GULATI's** Foison LLC SunTrust Bank account ending in 3257 | From Maryland to a location outside of Maryland |
| 10 | 12/7/2020 | Victim 4's $1,999.99 **RCC 588** deposited to **AHUJA's** Azure Support LLC TD Bank account ending in 5162 | From Maryland to a location outside of Maryland |
| 11 | 1/11/2021 | Victim 4's $3,459.99 **RCC 8442** deposited to **AHUJA's** MaxBit LLC TD Bank account ending in 9524 | From Maryland to a location outside of Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that, in the event of the defendants' conviction on any of the offenses in Counts One through Eleven of this Indictment, the United States will seek forfeiture as a part of any sentence, in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).

### Wire Fraud Forfeiture

2. Upon conviction of any of the offenses charged in Counts One through Eleven of this Indictment, the defendants,

**AMIT AHUJA, KAPIL GULATI, and PRIYANSHU WALIA,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes, or is derived from proceeds traceable to the scheme to defraud.

### Substitute Assets

3. If, as a result of any act or omission of the defendants, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property of the defendants pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Erek L. Barron / ELC*
Erek L. Barron
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED

10-17-24
Date